**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

---

**KEVIN KAVANAUGH,**

        **Plaintiff,**

  vs.                                                 Case No. 04-C-1210

**DR. PETER J. BADALAMENTI,
PETER JOHN BADALAMENTI, D.D.S., S.C.,
d/b/a THE BADALAMENTI PRIVATE
CENTER FOR ADVANCED AESTHETICS,
and "Badalamenti Center for Advanced
Aesthetic & Laser Dentistry," JOSEPHINE
BADALAMENTI, and SILVER IMAGE
CREATIVE, INC.,**

        **Defendants.**

**CINCINNATI INSURANCE COMPANY**

        **Intervening Plaintiff,**

  vs.

**KEVIN KAVANAUGH,
DR. PETER J. BADALAMENTI,
PETER JOHN BADALAMENTI, D.D.S., S.C.,
d/b/a THE BADALAMENTI PRIVATE
CENTER FOR ADVANCED AESTHETICS,
and "Badalamenti Center for Advanced
Aesthetic & Laser Dentistry," JOSEPHINE
BADALAMENTI, and SILVER IMAGE
CREATIVE, INC.,**

        **Defendants in Intervention.**

---

## DECISION AND ORDER

---

According to Kevin Kavanaugh ("Kavanaugh"), Dr. Peter J. Badalamenti, a cosmetic dentist, and his co-defendants (collectively "Badalamenti"), bit off more than they were contractually allowed to chew. Kavanaugh is a male model who claims that he and Badalamenti entered into a contract under which Badalamenti purchased the right to use Kavanaugh's image for one year in advertising campaigns. The agreement apparently limited the use of Kavanaugh's image to brochures, excepted its use from national ads, and prohibited computerized enhancements. Allegedly, Badalamenti used Kavanaugh's image for over six years and all over the country.

Kavanaugh's image appeared in a "before and after" ad, which makes the situation particularly vexing for Kavanaugh. Side-by-side photographs show a "before" picture of crooked, unhealthy (to put it mildly) teeth, and an "after" photo of straight, pearly whites. The ads purport to represent the mouth of an "actual client," but that, says Kavanaugh, is not accurate. Kavanaugh insists that the crooked, unhealthy teeth are not his and that he was never Badalamenti's client. Kavanaugh claims that, as a male model, his reputation and employability are hurt if people think that he once had crooked and unhealthy teeth.

In an eleven-count complaint[1] properly invoking this Court's diversity jurisdiction, Kavanaugh alleges a variety of wrongs including forms of conversion, libel, invasion of privacy, and negligence, among others, and he prays for both monetary and injunctive relief. Badalamenti answered and tendered the defense of the suit to his insurer, Cincinnati Insurance Company ("Cincinnati"), who issued a Dentist's Package Insurance Policy as well as a Professional

---

[1] Kavanaugh's complaint actually reads as if it has twelve counts. One of those twelve counts, however, is for injunctive relief which is not a count (or a cause of action), but a remedy.

Umbrella Policy and a Personal Umbrella Policy to Badalamenti. Cincinnati took up Badalamenti's defense under a reservation of rights. Now Cincinnati seeks to intervene and secure a judgment declaring that its policies do not cover Badalamenti in this case and that Cincinnati has no duty to defend him. Cincinnati also asks the Court to order mediation and stay the lawsuit for sixty days while the parties mediate.

### *I. Intervention*

Rule 24 of the Federal Rules of Civil Procedure provides four ways that a party may intervene,[2] but only one must be discussed here. Rule 24(a)(2) allows intervention of right upon a timely application

> when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

*Id.* Tracking the language of the rule, the Seventh Circuit has set out a four-part test for intervention under Rule 24(a)(2). In order to intervene under Rule 24(a)(2) Cincinnati must show: "(1) timeliness, (2) an interest relating to the subject matter of the main action, (3) at least potential impairment of that interest if the action is resolved without the intervenor, and (4) lack of adequate representation by existing parties." *Reid L. v. Ill. State Bd. of Educ.*, 289 F.3d 1009,

---

[2]Of the four ways to intervene, the first two are detailed in Rule 24(a) and both are of right. First, a party may intervene of right because a United States statute confers an unconditional right to intervene. Fed. R. Civ. P. 24(a)(1). Second, a party may intervene of right because the party has an interest "relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties." Fed. R. Civ. P. 24(a)(2). The other two ways to intervene, detailed in Rule 24(b), are permissive. A court may permit a party to intervene either when a United States statute provides a conditional right to intervene or "when an applicant's claim or defense and the main action have a question of law or fact in common." Fed. R. Civ. P. 24(b).

1017 (7th Cir. 2002). Cincinnati bears the burden of showing that it satisfies all four factors. *Id.* Because the "interest" part of the test informs the other three parts, the Court will take it up first.

**1. Interest**

Cincinnati must have a "direct, significant, and legally protectable" interest in order to intervene under Rule 24(a)(2). *Security Ins. Co. of Hartford v. Schipporeit*, 69 F.3d 1377, 1380 (7th Cir. 1995) (quotations omitted). Cincinnati issued its policy in Wisconsin and concedes that Wisconsin law applies to coverage issues. Thus, Wisconsin law dictates Cincinnati's interest in this case. *See United States v. Thorson*, 219 F.R.D. 623, 626 (W.D. Wis. 2003) (citing *Lexington Ins. Co. v. Rugg & Knopp, Inc.*, 165 F.3d 1087, 1091 (7th Cir. 1999)).

Cincinnati has two interests in this case: one obvious and one abstruse. Cincinnati's first interest is plain to see. If Cincinnati's policy covers Badalamenti's liabilities (if Badalamenti is, indeed, found liable), Cincinnati must pay the damages. That much is obvious, and that alone puts Cincinnati's dog in this fight. Cincinnati second interest is less apparent. Cincinnati has a duty to defend its insured if the allegations in the complaint even arguably implicate coverage (even if it is later proved that the policy does not provide coverage). *See Hamlin Inc. v. Hartford Accident and Indem. Co.*, 86 F.3d 93, 96 (7th Cir. 1996) (applying Wisconsin law and concluding that "[t]he test is whether the complaint arguably asserts a form of liability covered by the policy"); *Newhouse v. Citizens Sec. Mut. Ins. Co.*, 501 N.W.2d 1, 5-6 (1993); *Elloit v. Donahue*, 485 N.W.2d 403, 407 (Wis. 1992); *see also Thorson*, 219 F.R.D. at 626. If Cincinnati does not defend, and the Court finds coverage, the consequences could be far-reaching. Cincinatti would waive its right to later challenge coverage, *Prof'l Office Buildings, Inc. v. Royal Indem. Co.*, 427

N.W.2d 427, 431 (Wis. Ct. App. 1988), and it can be held liable for damages in excess of policy limits, *Newhouse*, 501 N.W.2d at 6-7, and possibly for punitive damages, *see Hamlin Inc.*, 86 F.3d at 95 (citing *Weiss v. United Fire & Cas. Co.*, 541 N.W.2d 753, 765 (Wis. 1995)). Cincinnati must, for all intents and purposes, be a part of this litigation until it can secure a judgment saying otherwise. Because Wisconsin law effectively obligates Cincinnati to be here until further notice—or to risk paying a hefty price—Cincinnati has a vested interest in the underlying action.

**2. Timeliness**

Cincinnati must also satisfy the timeliness factor, which is hotly contested by the parties. Timeliness is an inquiry into reasonableness, "requiring the potential intervenors to be reasonably diligent in learning of a suit that might affect their rights, and upon learning of such a suit, to act to intervene reasonably promptly." *People Who Care v. Rockford Bd. of Educ.*, 68 F.3d 172, 175 (7th Cir. 1995). Whether an application to intervene is timely depends on "(1) the length of time the intervenor knew or should have known of her interest in the case, (2) the prejudice caused to the original parties by the delay, (3) the prejudice to the intervenor if the motion is denied, and (4) any other unusual circumstances." *Id.* (citing *Ragsdale v. Turnock*, 941 F.2d 501, 504 (7th Cir. 1991)).

**a. Length of Time Intervenor Has Known of Its Interest**

Cincinnati has known of its interest since this case was filed. It has been defending Badalamenti under a reservation of rights since the inception of the suit. Kavanaugh maintains that Cincinnati took too long to intervene. He says the six-month delay between the time the case

was filed in the Western District of Missouri and the time Cincinnati filed its motion to intervene shows that Cincinnati has dragged its feet. Cincinnati points out that for the first 4 ½ months of the action, the defendants were awaiting a ruling on their motion to dismiss. Cincinnati did not want to intervene in an action that might be dismissed. Once the Western District of Missouri transferred the case to this district, Cincinnati again waited on the sidelines until it became clear that settlement talks were going nowhere. At that point, says Cincinnati, it intervened.

The point to which a suit has progressed is also part of the timeliness evaluation, *Nat'l Ass'n for the Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973), and it is instructive here. This suit has not progressed very far. Kavanaugh first filed his action in federal court in the Western District of Missouri where it stayed for four months until that court transferred the action here for jurisdictional reasons. Once here, the parties apparently engaged in settlement discussions for two months before it became apparent that the case would not settle quickly. As soon as settlement discussions began to flag, Cincinnati moved to intervene. Little discovery has been done—in fact the Rule 26(f) discovery report was only recently filed—and not a single dispositive motion has been filed. Indeed, this litigation is only beginning to pick up steam, and now is the time for Cincinnati to become involved.

**b. Prejudice Caused to Original Parties by Intervenor's Delay**

The prejudice caused to the original parties by the intervenor's delay is the most important consideration in the timeliness inquiry. *People Who Care*, 68 F.3d at 176; *Nissei Sangyo America, Ltd. v. United States*, 31 F.3d 435, 439 (7th Cir. 1994). "'The prejudice to the original parties to the litigation that is relevant to the question of timeliness is only that prejudice which

would result from the would-be intervenor's failure to request intervention as soon as he knew or reasonably should have know about his interest in the action.'" *Schultz v. Connery*, 863 F.2d 551, 554 (7th Cir. 1988) (quoting *Stallworth v. Monsanto Co.*, 558 F.2d 257, 265 (5th Cir. 1977)). In other words, the Court is not to measure whether Kavanaugh would be prejudiced by Cincinnati's intervention, but whether Kavanaugh would be prejudiced by Cincinnati's *delay* in intervening. *See Effjohn Int'l Cruise Holdings, Inc. v. A&L Sales, Inc.*, 346 F.3d 552, 561 (5th Cir. 2003) ("The inquiry for this factor is whether other parties were prejudiced *by the delay*, not whether they would be prejudiced *by the addition of the claim . . . .*").

Here, Kavanaugh alleges no prejudice, except that the time for discovery and briefing would be increased by two to three months so that the Court could determine whether Cincinnati is obligated to provide coverage. That delay would occur, however, simply by virtue of Cincinnati's intervention.

Moreover, the point to which this litigation has progressed is also informative in this prejudice inquiry. Discovery has only just begun, a scheduling conference has not taken place, and no dispositive motions have been filed. About the only thing that has happened is a meeting of the parties to discuss a discovery plan. Cincinnati sought to participate in that meeting while its motion to intervene was pending; Kavanaugh refused. Pursuant to that meeting Kavanaugh and Badalamenti recently filed a Rule 26(f) report on which the ink is barely dry. Cincinnati filed its motion to intervene long before the original parties even discussed scheduling matters; it cannot be said that Cincinnati's delay in intervening would prejudice parties who had done so

little before Cincinnati sought to intervene. If Cincinnati intervenes, the parties can quickly make the necessary adjustments.

### c. Prejudice to Intervenor if Intervention is Denied

The prejudice to Cincinnati if intervention is denied is relatively minimal, but it outweighs the prejudice that would be caused to the existing parties if Cincinnati is allowed to intervene. Cincinnati could always file its action separately and seek a quick declaration that it is not obligated to cover Badalamenti. But until it secures such a declaration, Cincinnati will be forced to provide Badalamenti's defense. It makes sense, both from the perspective of the parties and the perspective of judicial economy, to determine which parties have legal obligations and to proceed in an orderly and organized fashion.

Cincinnati's motion to intervene is timely. Neither Cincinnati nor any of the parties suggest that there are any unusual circumstances in this case for the Court to consider. The litigation has only just begun to move forward in any substantive sense. Cincinnati was not unreasonable in waiting to intervene until the lawsuit was transferred from the Western District of Missouri to the proper venue, nor was it remiss to wait until settlement discussions appeared fruitless. Prejudice to the existing parties is non-existent, and the prejudice to Cincinnati if it is not allowed to intervene, although slight, is greater than the prejudice to the existing parties.

## 3. Impairment

Cincinnati's interest in defending against liability (an interest it has only if its policy covers Badalamenti) will not be impaired if Cincinnati does not intervene. After all, Cincinnati is already defending its interests by defending Badalamenti.

Cincinnati's interest in limiting its coverage exposure, however, may be impaired if Cincinnati cannot intervene. Though Cincinnati could obtain such a judgment in a separate proceeding, it may bear significant legal expenses on behalf of Badalamenti in the meantime. Indeed, Cincinnati cannot be assured that a separate declaratory judgment action would be resolved before this suit, given the crowded nature of court dockets. Cincinnati's interest *may*, as a practical matter, be impaired if it is not allowed to intervene (and "may" is all Cincinnati needs to show). *See* Fed. R. Civ. P. 24(a)(2) ("disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest"); *see also United States v. City of Los Angeles*, 288 F.3d 391, 401 (9th Cir. 2002) ("the relevant inquiry is whether the consent decree 'may' impair rights 'as a practical matter' rather than whether the decree 'necessarily' will impair them.")

**4. Representation by an Existing Party**

Cincinnati's first interest, in defending against Badalamenti's liability, is adequately represented (in fact, that interest is represented by Cincinnati). But Cincinnati's second interest, in a declaration of non-coverage, is not represented at all in the current action. *See Lake Investors Dev. Group, Inc. v. Egidi Dev. Group*, 715 F.2d 1256, 1261 (7th Cir. 1983) ("this 'requirement of the rule is satisfied if the applicant shows that the representation of his interest "may be" inadequate; and the burden of that showing should be treated as minimal.'" (quoting *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972))). Only Cincinnati will represent its interest in a declaration of non-coverage.

A consideration of all the factors relevant to the intervention inquiry shows that Cincinnati should be allowed to intervene. Cincinnati's motion, while it could have been filed sooner, cannot be considered untimely in light of the progression of the litigation as a whole. This litigation has only begun to move forward on substantive issues and Cincinnati moved to intervene even before that forward progress began. Kavanaugh will not be prejudiced by Cincinnati's delay in moving to intervene. Again, substantive progress began in earnest only after Cincinnati's motion, and scheduling was not discussed for months after Cincinnati's motion, so Cincinnati's delay made no difference. Cincinnati, on the other hand, may be prejudiced if intervention is denied because it has no guarantee that a declaratory judgment could be secured through another court before this lawsuit has progressed to near completion. Because Cincinnati's motion was timely, because Kavanaugh will not be prejudiced by Cincinnati's delay, and because Cincinnati may be prejudiced if it is not allowed to intervene, the Court will allow Cincinnati to intervene.

## *II. Mediation*

Cincinnati also moves the Court to order mediation in the next sixty days. *See* United States District Court for the Eastern District of Wisconsin Local Rules: Civil Local Rule 16.5(a) ("The judge may order the parties to participate in ADR."). Cincinnati also asks that, if the parties cannot agree on a neutral mediator, that the Court appoint former Wisconsin Court of Appeals Judge Gordon Myse to mediate. Kavanaugh does not oppose mediation with a mutually agreeable mediator, nor does he oppose the Court selecting a mediator. The parties cannot agree, however, on the equitable apportionment of costs for mediation.

The Court will not step into this breach. The parties agree that mediation could be useful, and both seem willing to bear some expense in order to mediate. To the extent that the parties wish to use a private mediator, they should feel free to do so, but they must work out cost issues themselves. This Court offers mediation at no additional cost, in this case with Magistrate Judge Gorence as the neutral mediator. If the parties wish to avail themselves of this opportunity, they need only notify the Court and the case will be referred to Magistrate Judge Gorence for mediation. The apportionment of costs would be a non-issue. With such a neutral and cost-effective process in place, the Court will not order the parties to participate in mediation with a private mediator, nor will it order the division of fees and costs with such a mediator.

### *III. Stay*

Cincinnati has also asked the Court to stay proceedings for sixty days while the parties pursue mediation. Cincinnati hopes that such a reprieve will allow the parties to gain perspective on this lawsuit without running up the cost of discovery. Kavanaugh, though amenable to the idea of mediation, opposes Cincinnati's request for a stay.

There is no need to stay proceedings for sixty days while the parties pursue mediation. Mediation can be pursued while the underlying action progresses substantively forward, too. Indeed, perhaps the continued forward progression of the action will motivate the parties to be even more serious in mediation. After all, each day that the action progresses, the parties should have a better understanding of the strength of their respective positions.

Cincinnati also seems to be asking for a stay for a second reason, though that reason is clear only (if ever) in Cincinnati's reply brief. Cincinnati seeks to have the action stayed *while*

*Cincinnati contests coverage.* Cincinnati's initial brief in support of its motion to intervene provided sufficient notice to Badalamenti that Cincinnati sought to intervene of right, but it provided no notice that Cincinnati also sought to have the action stayed while Cincinnati contests coverage. Instead, it suggested that Cincinnati sought a stay only for the purpose of pursuing mediation. Not until its reply brief did Cincinnati indicate that it was seeking to intervene, bifurcate, and stay the underlying action while coverage issues are determined.

Perhaps this shortcoming arises out of Cincinnati's misconception that Wisconsin procedural law—which commends the intervention of an insurer followed by the bifurcation of trial and a stay of the liability action while coverage issues are decided—applies in this instance.[3] Wisconsin procedural law does nothing of the sort; that issue has been laid to rest for sometime. A federal court sitting in diversity, like this Court, applies to substantive issues the law of the state in which it sits and to procedural issues federal law. *Tropp v. Western-Southern Life Ins. Co.*, 381 F.3d 591, 595 (7th Cir. 2003). Although the procedure used here may be similar to Wisconsin procedure, or perhaps even identical, there is no mistaking: this Court follows federal procedure. The reasons that Cincinnati would be allowed to intervene in a Wisconsin law suit are (not surprisingly) quite similar, if not identical, to the reasons for allowing Cincinnati to intervene in federal court. But Cincinnati is not allowed to intervene *because* Wisconsin would allow it.

Similarly, the Court will not bifurcate the trial and stay the underlying liability action while coverage issues are determined simply because a Wisconsin court would. If Cincinnati wishes

---

[3]Cincinnati's reply brief contains the surprising statement that no federal case stands for the proposition that a federal court should not apply "Wisconsin law with respect to the procedure for contesting insurance coverage." (Cincinnati's Reply Br. Supp. Mot. to Intervene at 3-4.)

to pursue such a strategy it must properly move the Court under the Federal Rules of Civil Procedure. By making the appropriate motion, Cincinnati provides its opponents sufficient notice to respond to its request (a notice not provided in Cincinnati's motion to intervene). Then, the other parties may weigh in on the matter. As it stands, the Court will not bifurcate and stay proceedings based on a request first made apparent in a reply brief. The issue is not properly before the Court.

Finally, Kavanaugh asks for an order requiring expedited disclosure of certain discovery materials if the Court orders mediation. The Court need not address this request because it is not ordering mediation, nor staying discovery. Accordingly, his request is dismissed.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

Cincinnati's Motion to Intervene, File Its Complaint for Declaratory Judgment, and Stay the Lawsuit Pending Early Mediation [Docket No. 36] is **GRANTED IN PART** and **DENIED IN PART** as follows:

> (1) Cincinnati's Motion to Intervene and File Its Complaint for Declaratory Judgment is **GRANTED**.
>
> (2) Cincinnati's Request that the Court order mediation is **DENIED**.
>
> (3) Cincinnati's Motion to Stay the Lawsuit Pending Early Mediation is **DENIED**.

Kavanaugh's Request for Production of Financial Records in Aid of Mediation is **DISMISSED** as moot.

Cincinnati's Rule 7.4 Expedited Non-Dispositive Motion For Stay [Docket No. 53] is **DISMISSED** as moot.

**IT IS FURTHER ORDERED THAT:**

The parties will file a new report pursuant to Rule 26(f) in preparation for a scheduling conference call. Pursuant to Federal Rule of Civil Procedure 16(b), that telephonic scheduling conference is scheduled for **September 13, 2006** at **10:30 a.m** (Central Time). Please be available at that time. The Court will initiate the call.

The purpose of the conference call will be to establish a Scheduling Order which will limit the time:

1. to join other parties and to amend the pleadings;

2. to file and hear motions;

3. to complete discovery; and

4. to disclose experts.

The Scheduling order may also include:

5. the date or dates for subsequent Rule 16 conferences, a final pretrial conference and trial; and

6. any other matters appropriate in the circumstances of the case.

The time limitations set forth in the Scheduling Order shall not be modified except upon showing of good cause and by leave of the Court. Fed. R. Civ. P. 16(b)(6).

Special attention should be given to Rule 26(f), which requires the parties to conduct a settlement/discovery conference at least twenty-one (21) days prior to the initial scheduling conference described above. The Rule 26(f) conference may be conducted by telephone. Rule 26 also mandates that the parties, within fourteen (14) days of their conference: (1) file a written report outlining the proposed discovery plan they have developed at their Rule 26(f) conference; and (2) make the required initial disclosures under Rule 26(a) regarding witnesses and documents. In addition to the matters specified in subsections (1)-(4) of Rule 26(f), the Court requests that the proposed discovery plan submitted by the parties include a very brief statement of the nature of the case, lasting no more than several sentences.

Dated at Milwaukee, Wisconsin this 18th day of July, 2005.

**BY THE COURT**

**s/ Rudolph T. Randa**

**Hon. Rudolph T. Randa**
**Chief Judge**